UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE KNAPP,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | ) Case No.: 1:11-cv-00230 - JLT<br>)<br>) ORDER GRANTING PLAINTIFF'S MOTION FOR<br>) SUMMARY JUDGMENT<br>)<br>) (Doc. 13)<br>)<br>) ORDER DIRECTING REMAND PURSUANT TO<br>) SENTENCE FOUR OF 42 U.S.C. § 405(g) AND<br>) DIRECTING ENTRY OF JUDGMENT IN FAVOR<br>) OF PLAINTIFF JANICE KNAPP |

Janice Knapp ("Plaintiff") asserts she is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") improperly evaluated the opinion of a treating physician, failed to find her chronic obstructive pulmonary disease was a severe impairment, and erred in assessing her credibility. Therefore, Plaintiff seeks review of the administrative decision denying her claim for benefits. For the reasons set forth below, Plaintiff's motion for summary judgment is **GRANTED** and the matter is **REMANDED** for further proceedings.

**PROCEDURAL HISTORY**[1]

Plaintiff filed an application for supplemental security income on January 31, 2007, alleging disability beginning September 30, 2005. AR at 107. The Social Security Administration denied her

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1  claim initially and upon reconsideration. *Id.* at 68-81. After requesting a hearing, Plaintiff testified
2  before an ALJ on March 6, 2009. *Id.* at 25-55. The ALJ determined Plaintiff was not disabled, and
3  issued an order denying benefits on June 16, 2009. *Id.* at 16-22. Plaintiff requested review of the
4  ALJ's decision by the Appeals Council of Social Security, which was denied on December 13, 2010.
5  *Id.* at 1-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social
6  Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for supplemental security income under Title XVI of the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. § 416.927.

### A.   Relevant Medical Evidence

On March 24, 2005, Dr. Todd Spencer noted Plaintiff "presents with chronic low back and radicular pain." AR at 247. Plaintiff underwent a CT scan of her lumbar spine, which Dr. Spencer opined showed "multilevel degenerative changes." *Id.* In addition, Dr. Spencer found "some mild central spinal stenosis and lateral recessed stenosis at L5-S1." *Id.*

In January and February 2006, Plaintiff was treated at Dr. Youseef Hadweh's office for leg pain, swelling in both legs, and shortness of breath. AR at 183-84. Plaintiff was diagnosed with peripheral edema and bronchitis. *Id.* Although Plaintiff continued to complain of body aches and shortness of breath in April 2006, and she was given a nebulizer unit. *Id.* at 181-82. On April 21, 2006, her bronchitis was "much improved." *Id.* at 181.

Plaintiff reported that she continued to suffer pain in June and July of 2006, and the dosage of her prescribed Vicodin was increased. AR at 179-80. In addition, Plaintiff's breathing was "worse," and she reported poor sleep. *Id.* at 179. She was diagnosed with chronic obstructive pulmonary

1  disease (COPD), and was to continue use of the nebulizer. *Id.* On September 8, 2006, Plaintiff was
2  diagnosed with poor control over diabetes mellitus, and was prescribed insulin. *Id.* at 174.
3  Throughout the remainder of 2006, Plaintiff reported pain in various parts of her body, including her
4  elbows, the left side of her neck, right elbow, knee, and hip. *See id.* at 167-77.

5        On January 24, 2007, Plaintiff visited her physician and reported that she "wants to quit
6  smoking," and requested a nicotine patch. AR at 166. However, in April 2007, Plaintiff reported she
7  again had shortness of breath, and examination revealed diffuse breathing sounds. *Id.* at 246. Plaintiff
8  was diagnosed with bronchitis, and again told to use the nebulizer. *Id.*; *see also id.* at 211.

9        Dr. Martin completed a consultative physical examination on May 26, 2007. AR at 191-93.
10 Plaintiff told Dr. Martin she had been treated for asthma for several years. *Id*. at 191. Plaintiff
11 reported she had "used inhalers in the past but 'they did not work,'" so she used a home "nebulizer
12 several times a day." *Id.* Plaintiff said she had been diagnosed with diabetes mellitus "for about three
13 years," and had required the use of insulin for about the last year. *Id.* She said she smoked a pack of
14 cigarettes "every day and a half." *Id.* Dr. Martin noted Plaintiff used a cane and walked with a limp
15 but had "[n]o obvious difficulty getting off/on the examination table or moving about." *Id.* However,
16 she "was not able to walk on [her] heels or toes." *Id.* at 192. Dr. Martin opined Plaintiff's level of
17 cooperation with the musculoskeletal examination "was unclear" because her "[f]ormal movements
18 were noted to proceed much more slowly and less smoothly than noted casually," and her "grimacing
19 and pain vocalization" were not noted with casual movements. *Id.* at 191. Plaintiff's dorsolumbar
20 spine showed full movement, but she had less than normal degrees of movement with her cervical
21 spine. *Id.*

22       Based upon the examination, Dr. Martin opined Plaintiff "can lift no more than 20 lbs. at a
23 time and frequently lift or carry up to 10 lbs., stand and walk, off and on, for at least six hours in an
24 eight-hour day and sit for six hours in an eight-hour day." AR at 193. In addition, Dr. Martin
25 observed Plaintiff "seems to have the ability to grasp, hold and turn objects and has good use of the
26 hands and fingers for repetitive hand and finger actions." *Id.*

27       On June 14, 2007, Dr. Jing completed a physical residual functional capacity assessment and
28 opined Plaintiff had the ability to lift and/or carry ten pounds frequently and twenty pounds

occasionally. AR at 195. In addition, Plaintiff could stand, walk, or sit with normal breaks for a total of about six hours in an eight-hour workday. *Id.* Dr. Jing opined her ability to push and/or pull was unlimited. *Id.* Further, Dr. Jing believed Plaintiff did not establish any postural, manipulative, visual, communicative, or environmental limitations. *Id.* at 195-97. Therefore, Dr. Jing opined Plaintiff had the ability to perform light work. *Id.* at 198.

Plaintiff was treated at Dr. Hadweh's office on June 19, 2007 for pain in her back and legs. AR at 210. She was diagnosed with degenerative joint disease, and an MRI was recommended. *Id.* A diagnostic study on her lower back in July by Dr. Spencer revealed "multilevel degenerative changes including degenerative disc disease, endplate sclerosis, facet arthropathy and osteopenia." *Id.* at 203. There were no disc bulges, protrusion, or extrusion at the L1-L5 levels. *Id.* However, Dr. Spencer determined Plaintiff had "marked encroachment upon both L5 and S1 never roots." *Id.* at 203.

On October 23, 2007, Dr. Anne Khong completed a physical residual functional capacity as well. AR at 213-18. Dr. Khong opined Plaintiff had the ability to lift and/or carry ten pounds frequently and twenty pounds occasionally. *Id.* at 213. Dr. Khong believed Plaintiff had the following postural limitations: Plaintiff could frequently climb ramps and stairs; occasionally climb ladder, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently kneel. *Id.* at 214. Dr. Khong opined Plaintiff did not establish any further limitations. *Id.* at 215-16. Upon review of the medical records, Dr. Khong observed there were no orthological findings or respiratory complaints in the treating physician records, and Plaintiff did not use an inhaler. *Id.* at 218. In addition, Dr. Khong noted Plaintiff appeared to engage in symptom magnification at the consultative examination, because she "brought a cane [and] exhibited a limp – neither of which is evident in [treatment] records." *Id.* Therefore, Dr. Khong opined Plaintiff could perform light work, with postural limitations for her back. *Id.*

In February 2008, Plaintiff received a prescription for a motorized wheelchair with an oxygen tank holder due to "weakness [in] upper arms and legs." AR at 149, 151. The physician noted Plaintiff's ambulation was non-functional and limited by arthritis. *Id.* at 150. Plaintiff was expected to use the wheelchair 4-6 hours a day, for the rest of her life. *Id.* at 150-51.

Due to her complaints of severe pain and the appearance of a disc bulge, Plaintiff underwent an MRI of her lumbosacral spine on April 4, 2008. AR at 237. Dr. Scott Driscoll opined there was "no evidence of compression fracture, narrowing of the interpsaces, spondylolysis or spondylolisthesis." *Id.* However, Dr. Driscoll found "evidence of a herniated nucleus pulposus at L5-S1 with encroachment upon left-sided neural foramen." *Id.*

In September 2008, Plaintiff reported her back and hip pain had increased. AR at 239. Throughout the remainder of 2008, Plaintiff complained of chronic pain and poor sleep. *See, e.g., id.* at 221-23.

On February 19, 2009, Dr. Hadweh[2] completed several residual functional capacity questionnaires regarding Plaintiff's impairments. AR at 248-59. Dr. Hadweh noted he saw Plaintiff "as needed," and she suffered from chronic bronchitis, chronic obstructive pulmonary disease, chronic back pain, and degenerative joint disease—osteoarthritis. *Id.* at 248, 252, 256. According to Dr. Hadweh, Plaintiff had shortness of breath, chest tightness, wheezing, edema, episodic acute bronchitis, fatigue, and coughing. *Id.* at 248. Precipitating factors for Plaintiff's asthma attacks included stress, irritants, allergens, and change in weather. *Id.* In addition, Dr. Hadweh noted Plaintiff had "limited mobility," and exercise could trigger an asthma attack. *Id.* He believed Plaintiff was unable to walk a city block, and could sit or stand for up to five minutes at a time. *Id.* at 250, 253. Further, Dr. Hadweh concluded Plaintiffs as "never" able to lift and carry less than 10 pounds, or twist, stoop, bend, crouch or climb. *Id.* at 250. Dr. Hadweh noted Plaintiff had the ability to use her hands, fingers and arms, for 10% of an eight-hour work day. *Id.* at 255. He believed Plaintiff was required to elevate her legs above the level of her heart twenty minutes of every hour. *Id.* at 258.

**B.    Hearing Testimony**

Plaintiff testified at the hearing before the ALJ on March 6, 2009. AR at 25. Plaintiff reported she had completed the tenth grade in high school, and did not earn a GED. *Id.* at 31. She said she had never worked because her husband had always been her provider. *Id.* at 32. Plaintiff said her husband

---

[2] As noted by the parties and the ALJ, there is some confusion as to which physician provided these statements from Dr. Hadweh's office because the signature is illegible. However, because the ALJ referred to Dr. Hadweh as the author of these assessments (*see* AR at 20), the Court will continue to do so for clarity.

had worked as a truck driver, but was no longer working due to "a fractured back," and he was seeking state disability. *Id.*

She said she had a herniated disc that caused pain "right in the middle of the lower back." AR at 32, 35. She testified she had constant, severe pain in her lower back, hips, neck, and around her shoulders. *Id.* at 32-33, 45. In addition, Plaintiff had arthritis and degenerative joint disease in her ankles, knees, elbows, and wrist. *Id.* at 37. She reported her knees hurt "all the time," so she was unable to kneel down upon them. *Id.* at 33. Plaintiff said she took Ibuprofen and Vicodin for her pain. *Id.* at 36. According to Plaintiff, her doctor was going to prescribe Oxycontin, but she refused to take it because she had heard of people developing addictions to Oxycontin. *Id.* She stated she received injections for her pain "once a month" which mellowed the pain, but did not kill it. *Id.* at 37.

Plaintiff believed her pain affected her ability to move, and said she was unable to twist her back, bend over, or reach. *Id.* at 33. She testified that her pain made her incapable of performing some household chores. *Id.* at 36. For example, Plaintiff reported she could not "stand up long enough to do a load of dishes in the sink" or "bend over to put laundry in to wash—the dryer or the washing machine." *Id.* As a result, Plaintiff said her daughter did all cleaning and laundry. *Id.* at 46. Likewise, Plaintiff said she was unable to take care of her daily needs, and was unable to get in and out of the bathtub on her own, and help from either her daughter or husband. *Id.* at 36, 47.

According to Plaintiff, she required the use of assistive devices, such as a cane, walker and motorized wheelchair. AR at 33-34. Plaintiff said that although her doctor said he would prescribe a cane and walker, he did not, and Plaintiff got them from her mother. *Id.* at 34. She reported she used the motorized chair "all the time," and had ordered a ramp for the chair to use with her vehicle. *Id.* at 38. Plaintiff believed she was able to walk "[m]aybe half a block, if that," and sit for twenty to thirty minutes. *Id.* at 38.

Plaintiff said she had type II diabetes for which she took insulin and oral medication. AR at 39. She testified the diabetes caused her to have blurry vision, problems with her feet, headaches, and to have to use the restroom "all day long." *Id.* at 40, 43. Plaintiff reported her feet hurt "constantly," and explained that when she was sitting at the hearing, it felt like she was "standing on a bed of

needles." *Id.* at 41. Her hands and fingers would swell, and Plaintiff reported she could "hardly" make a fist or hold small items such as a coffee cup. *Id.*

Further, Plaintiff testified she suffered from asthma and COPD. AR at 42. Plaintiff said she used two inhalers three times a day and a nebulizer four times a day, "20 to 25 minutes each time." *Id.* at 42-43. In addition, she reported using oxygen six hours a day, unless she needed it more, and she slept with a portable oxygen tank. *Id.* at 43-44. She said she was "always coughing" and short of breath." *Id.* Plaintiff reported she had quit smoking three months prior to the hearing. *Id.* at 49.

Vocational expert ("VE") Thomas Dachelet testified at the hearing after Plaintiff. AR at 50. The ALJ asked the VE to consider a hypothetical individual with the same "age, education, and work experience" as Plaintiff. *Id.* at 51. The ALJ stated the worker was capable of light work but could "only occasionally balance, stoop, crouch, crawl, and climb ramps or stairs." *Id.* In addition, the worker could "frequently kneel," but "never climb ladders, ropes, or scaffolds." *Id.* at 51-52. The VE opined these restrictions "have a minimal impact" upon the "entire world of light, unskilled" work. *Id.* at 52.

Then, Plaintiff's counsel identified several limitations for the VE's consideration. the VE believed no jobs would be available for a person who could "lift and carry less than ten pounds, [] stand and walk a total of less than two hours and sit a total of about two hours in an eight hours." AR at 52. Likewise, no work was available if the individual required unscheduled breaks for 20 minutes to take medicine or "needed a job that permitted shifting positions at will from sitting, standing, or walking." *Id.* at 52-53. Further, "if the person had only 10 percent use of hands for grasping and lifting objects, and fingers for fine manipulation and arms for reaching, including overhead," no jobs were available. *Id.* at 53. *Id.*

C. **The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity since the application date of January 31, 2007. AR at 18. Second, the ALJ found Plaintiff had the following severe impairments: lumbar degenerative disc disease, bilateral degenerative joint disease of the knees, diabetes mellitus, and obesity. *Id.* The ALJ opined Plaintiff's chronic obstructive pulmonary disease "does not substantially interfere with her ability work," and

was not severe. *Id.* Plaintiff's impairments did not meet or medically equal a listing. *Id.* The ALJ determined Plaintiff had the residual functional capacity ("RFC"): "to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours, and sit for 6 hours, in an 8-hour workday; frequently kneel; occasionally balance, stoop, crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds." *Id.* With this RFC, Plaintiff was capable of performing work in the national economy. *Id.* at 21. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## DISCUSSION AND ANALYSIS

### A. Evaluation of the medical evidence

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(d)(2).

A physician's opinion is not binding upon the ALJ, and may be rejected whether the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751. When the opinion of a treating physician is not contradicted, the ALJ must set forth "clear and convincing" reasons to reject the opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). On the other hand, with "specific and legitimate" reasons, supported by substantial evidence in the record, the ALJ may reject the contradicted opinion of a physician. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the court when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support

either outcome, the court may not substitute its judgment for that of the ALJ"). The opinion of a treating physician may be rejected whether or not the opinion is contradicted by another. *Magallanes*, 881 F.2d at 751.

Plaintiff argues the ALJ erred in evaluating the opinion of her treating physician. Although the ALJ was not clear as to which physician provided the three functional capacity assessments, he acknowledged they were provided by a treating physician, and proceeded to discuss the assessments as though they were offered by Dr. Hadweh. (*See* AR at 20). After discussing the contents of the opinion, the ALJ concluded, "I give this opinion little weight because it is not only inconsistent with the record as a whole, but also internally inconsistent." *Id.* Plaintiff contends these are not specific and legitimate reasons for giving less weight to the opinion. (Doc. 13-1 at 14).

A medical opinion may be rejected when it is "unsupported by the record as a whole." *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003). Likewise, an opinion may be rejected where there is incongruity between a treating doctor's assessment and his medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). When an ALJ disregards a treating physician's opinion, the ALJ must "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

Here, the ALJ noted the inconsistency with regard to Plaintiff's ability to stand and walk, because Dr. Hadweh opined Plaintiff "can stand and walk for less than two hours total per day, for 5 minutes at a time" but "he also concluded she must also walk every 5 minutes for 1-2 minutes." AR at 20. However, the ALJ did not identify any inconsistencies with regard to the opinion that Plaintiff required the use of an assistive device and was unable to lift and carry any amount of weight, both of which would impact her ability to perform light work.

The Ninth Circuit has explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Here, the ALJ failed to identify and discuss specific conflicting evidence in the record supporting his determination that the opinion was "inconsistent with the record as a

10

whole." Rather, the ALJ offered only the conclusion that the opinions of Dr. Hadweh were inconsistent with the record. Consequently, the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, or support his determination with substantial evidence in the record.

**B.     Remand is appropriate in this matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the Smolen factors to this case, the ALJ failed to set forth legally sufficient reasons to properly reject the opinion of Plaintiff's treating physician. This opinion is intertwined with the testimony of the vocational expert regarding Plaintiff's ability to perform work in the national economy and the RFC determination based thereon by the ALJ. Consequently, the matter should be remanded for the ALJ to re-evaluate the medical opinions, because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the opinion of the treating physician was credited.

**CONCLUSION AND ORDER**

For all these reasons, the Court concludes the ALJ erred in the evaluation of the medical evidence and in giving less weight to the opinion of Plaintiff's treating physician. The ALJ failed to set forth legally sufficient reasons supported by substantial evidence in the record for giving less

weight to the opinion of Plaintiff's treating physician.  As a result, the ALJ failed to apply the correct legal standards and the decision should not be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Because the Court finds remand is appropriate on this matter, it offers no findings on the remaining issues.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for summary judgment is **GRANTED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Janice Knapp and against Defendant, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 10, 2012**               /s/ Jennifer L. Thurston
                                        UNITED STATES MAGISTRATE JUDGE